LADNIER *v.* INGRAM DAY LUMBER CO.*

(Division A. May 19, 1924.)

[100 So. 369. No. 23859.]

1. LOGS AND LOGGING. *"Saw log timber" defined.*

     The term "saw log timber" as used in contracts for the sale of growing trees means such trees as can be cut into logs of convenient size for being sawed or manufactured into lumber.

2. LOGS AND LOGGING. *Method of proving size to which tree must have grown before saw log timber stated.*

The size to which a tree must attain before it is suitable for being sawed or manufactured into lumber, thereby becoming saw log timber within the meaning of that term as used in a contract for the sale of growing trees, is a question of fact to be proved in each case either by evidence of any custom relative thereto among people engaged in the saw milling and lumber business, or, in the absence thereof, as any other fact is proven.

3. LOGS AND LOGGING. *Effect of timber deed containing clause limiting time for removal, with respect to vesting title stated.*

A deed to growing trees containing a clause limiting the time in which the vendee must cut and remove them vests the title thereto in the vendee subject to defeasance as to the trees not removed within the time limit.

4. LOGS AND LOGGING. *Deed conveying saw log timber conveys whole of each tree from which saw logs may be cut.*

A deed to all saw log timber on land therein described conveys the whole of each tree from which saw logs may be cut, and not merely that portion of each tree that can be cut into saw logs.

5. APPEAL AND ERROR. *Judgment not reversed because of erroneous ruling not prejudicial to complaining party.*

A judgment or decree will not be reversed by the supreme court because of an erroneous ruling of the trial court, which was not prejudicial to the party against whom the judgment or decree was rendered.

6. TRESPASS. *Penalty not incurred for boxing trees unless done willfully without owner's consent.*

In order for the penalty imposed by section 4983, Code of 1906 (Hemingway's Code, section 3252), for boxing trees for turpentine to be incurred, the boxing of the trees must not only be done without the consent of the owner of the land or of the trees but also willfully or recklessly.

7. INJUNCTION. *Granted against boxing of trees for turpentine without owner's consent.*

A person who has boxed and is continuing to box trees on land not ·his own without the consent of the owner of the land or trees will be enjoined from continuing so to do in a suit brought for that purpose by the owner of the land.

*Headnote 1. Logging, 25 Cyc, p. 1549; 2. Logging, 25 Cyc, p. 1550; 3. Logging, 25 Cyc, p. 1552; 4. Logging, 25 Cyc, p. 1549; 5. Appeal and Error, 4 C. J., section 2948; 6. Trespass, 38 Cyc., p. 1166; 7. Injunctions, 32 C. J., section 171.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Suit by Clozelle Ladnier against the Ingram Day Lumber Company. From a decree awarding him insufficient relief, complainant appeals. Reversed and judgment rendered.

*T. M. Evans,* for appellant.

The court erred in not granting the injunction prayed for on the final hearing against the defendants jointly and severally, enjoining them jointly and severally from working the said timber for turpentine.

"The term *land* embraces not only the soil but its natural produce growing upon and affixed to it. Such things, being the natural product of the land, or part and parcel of it, therefore pass by a grant of the land. Shep. Touchs. 91. Being naturally affixed to it, they are not distinguishable from it, until actually severed. *Jones* v. *Flint,* 10 Adolph. and Ellis 753. Hence growing trees were not the subject of larceny at common law (4 Bl. Comm. 232), and they descend to the heir, and do not go to the executor; and even the tenant for life has no right to cut them down." 2 Bl. Comm. 122.

"When the statute speaks of 'lands, tenements, and hereditaments,' it must be understood to refer to them, in such sense as the terms imported at common law; and, according to the principles above stated, growing trees must be considered as pertaining to the soil and embraced by the terms of the statute. This view has been sanctioned by many well-considered cases. *Teal* v. *Auty,* 2 Brod. & Bring. 99; *Crosby* v. *Wadsworth,* 6 East, 602; *Jones* v. *Flint,* 10 Adolph & Ellis, 753; *Green* v. *Armstrong,* 1 Denio, 550; *Bank of Lansingburg* v. *Crary,* 1 Barb. 542; *Putney* v. *Day,* 6 New Hampshire, 630; *Scorell* v. *Boxall,* 1 Y. & J. 396; *Pierrepont* v. *Barnard,* 5 Barb. 364." *Fox* v. *Lumber Co.,* 80 Miss. 6.

In the case of *Zirkle* v. *Allison,* 126 Va. 701, 101 S. E. 59, 15 Am. Law Rep. Ann. 40, the court says: "These

cases undoubtedly settle the proposition in Virginia that, under timber contracts which require the timber to be cut and removed by a specified time, the title never passes out of the grantor until the grantee cuts and removes it within the period of time specified in the contract for so doing; not that there is a forfeiture by the grantee of the timber remaining uncut or unremoved after the time limit, but because it has never become his property, for there is an express condition precedent in the contract itself that precludes the passing of the title from the grantor to him.''

The same rule applies in the case of *Clark* v. *Gust*, 54 Ohio St. 298, 15 Am. L. Rep. 77; *Pease* v. *Gibson*, 6 Maine 81, 15 Am. L. Rep. 78; *Blackstone Mfg. Co.* v. *Allen*, 117 Va. 452, 15 Am. L. Rep. 32; 116 Va. 530. *Mallett* v. *Doherty*, 15 Am. L. Rep. 19 to 22, 180 Cal. 225; *Williams* v. *McCarty*, 15 Am. L. Rep. 9 to 18; 82 W. Va. 158.

These decisions have been followed in Mississippi beginning with *Hall* v. *Eastman-Gardner*, 89 Miss. 608, 609; *Clark* v. *Ingram-Day*, 90 Miss. 488, 489; *Hand* v. *Fillingame*, 92 Miss. 185; *Rowan* v. *Carlton*, 100 Miss. 183, 184, 185. Under all the authorities that we are able to find, except Alabama, Georgia and perhaps Tennessee, the law as laid down in the foregoing opinion is adopted in every state in the union.

*White & Ford,* for appellee.

The permanent injunction is purely an afterthought on the part of appellant. It was not urged below. There is not necessity for it. It is not shown the timber is being worked for turpentine and in fact it was not being worked at the time of the trial and hasn't since been. As to cutting of the trees, when Ingram Day Lumber Company comes to cut the trees, should it then cut anything not covered by its deed, that will be time enough for an injunction. The bill does not allege the parties are insolvent. Why issue an injunction when there is nothing

to enjoin.   There is no proof that an injunction is necessary.

It will be noted that recovery in this case, almost entirely, rests on fictional or imaginary damages alleged to have been sustained by appellant.   For any turpentine removed, not belonging to appellee, full recovery has been allowed.   Damages were allowed him for the going on to the land, when in the nature of things such damage is unsubstantial.   He also has been allowed punitive damages for such going on the land.   The chancellor found no tree was "boxed," and if any had been "boxed," still under the facts he finds it would not be a case for the application of the statutory penalty.   There was no proof of the value of any pine straw or tops of trees or that appellees had taken or removed any.   The chancellor has followed prior decisions of this court in each element of damage allowed.   Appellees have not appealed

*T. M. Evans,* for appellant, in reply.

Counsel for the appellee insists that appellant is not entitled to an injunction because it is not alleged in the bill of complaint that the defendants are insolvent.   We can see that in a suit asking for a preliminary or interlocutory or temporary injunction, in enjoining the trespass, pending the final hearing, that it would be necessary to allege insolvency.   But, it is never necessary to allege insolvency in order to secure an injunction against a continuing or repeated trespass upon the final hearing of a cause.

The bill of complaint in this case alleges that this timber was leased by the defendant Ingram Day Lumber Company to the defendant Hagan, for three years at ten cents per tree a year and the answer admits it.   It is true that on the hearing of this case in the winter there was no turpentine work being done; but the defendant Hagan had a three-year lease, two years to expire, and the court held that he had no right to do the work.   The

bill of complaint also alleges that the defendant Ingram Day Lumber Company threatened to cut and haul every tree that has been boxed for turpentine from the land, top, limbs, and everything; and unless restrained by injunction will do so, and the answer admits it. This would be a continued trespass and on the final hearing of the cause the appellant was entitled to a permanent injunction against the Ingram Day Lumber Company restraining them from cutting and removing anything but saw log timber from the land, if any. There is abundance of evidence that tops, limbs and pine straw have never been recognized as saw log timber, and that from time immemorial it has been the custom to cut the saw log from the tree to be carried to the mill and manufactured into lumber, leaving stumps, tops, limbs, etc., on the ground for domestic purposes of the owner.

Argued orally by *T. M. Evans,* for appellant, and *W. H. White,* for appellee.

SMITH, C. J., delivered the opinion of the court.

The appellant brought this suit against the Ingram Day Lumber Company and E. Hagan alleging that without his consent they had boxed and were continuing to box for turpentine a large number of pine trees growing on his land, and prayed for damages therefor and for an injunction restraining the company and Hagan from continuing their alleged trespasses on his land. The boxing of the trees and the appellant's ownership of the land were admitted by the appellees, defendants below, who in justification thereof rely upon a deed executed by the appellant's grantor prior to his purchase of the land to the Gulf Coast Lumber Company reciting that:

"For and in consideration of the sum of six hundred dollars ($600) cash in hand paid the receipt of which is hereby acknowledged, we hereby sell, convey, and

warrant unto the Gulf Coast Lumber Company, a cor-
poration chartered under the laws of the state of Mis-
sissippi, its successors and assigns, all the saw log tim-
ber on the following described lands, to-wit: North one-
half of North East quarter, South East quarter of North
East quarter and North East quarter of South East
quarter of section 5, Township 6, Range 13 west, situated
in Harrison county, state of Mississippi.

"The said Gulf Coast Lumber Company, its succes-
sors and assigns, to have a period of twenty (20) years
in which to cut and remove said timber on the above-
described lands."

A deed to the trees was afterwards executed by the
Gulf Coast Lumber Company to the Ingram Day Lum-
ber Company with whose consent for a consideration the
trees were boxed by Hagan.

When the cause came on to be heard, the court below
permitted the introduction of evidence as to the size of
trees that would constitute saw log timber at the date of
the sale by the appellant's grantor thereof to the Gulf
Coast Lumber Company and held therefrom that a tree
measuring eight inches in diameter fifteen inches from
the ground would answer such description. And also
held on the evidence that between the date of the sale
thereof and the time they were boxed by the appellees
the trees had grown two inches in diameter, so that all
trees boxed by the appellees ten inches or more in diam-
eter fifteen inches from the ground were embraced with-
in the Gulf Coast Lumber Company contract. The cause
was then referred to a master with instructions to as-
certain the number of trees boxed by the appellees less
than ten inches in diameter fifteen inches from the ground
and to report the damage sustained by the appellant by
reason thereof.

The master reported the boxing by the appellees of
three hundred and fifty-nine trees less than ten inches in
diameter fifteen inches from the ground, resulting in the
damage to the appellant of one hundred and eighteen

dollars and eighty-three cents and that he should be allowed in addition thereto four hundred and ninety-six dollars and forty-nine cents punitive damages, making a total of six hundred and fifteen dollars and thirty-two cents and there was a decree accordingly without the injunction prayed for, from which the complainant has appealed.

The instruction given to the master relative to statutory and punitive damages is as follows:

"It appearing further that this trespass was done within the last year and since the definite decision by our highest court upon the question as to the right of going upon our lands and boxing for turpentine which holds that no such right is given under such a deed as is involved in this case it is bound to follow that there was a willful invasion of the premises for a purpose not authorized by the deed. But the court holds that it is not possible to allow a statutory penalty for boxing any of the trees for the reason that as shown by the testimony that what is meant by saw log timber is one so poorly understood and so much subjected to question as to what is included that it would not be just to make a penal finding of statutory penalty for boxing any particular kind of tree and whatever penalty that is fixed should be by way of general punitive damages. . . . That the master also recommend whether in his judgment the case merits the fixing of general punitive damages, and, if so, how much. Without directing the master in this latter regard, but only by way of suggesting to him, it is the present idea of the court that this amount should be fixed so as to absorb all profit; what the defendants respectively made out of the knowing violation of right in turpentining on this land, plus an additional amount that will prevent defendants and others in like situation from taking chances on such knowing violation of right."

During the course of the trial the court ruled that the burden was on the appellant of proving that the trees boxed by the appellees were not those conveyed by the Gulf Coast Lumber Company deed.

The contentions of the appellant are:

(1) The deed to the Gulf Coast Lumber Company under which the appellees claim the right to box the timber is void for the reason that the description of the timber therein attempted to be conveyed is too indefinite.

(2) Damages should have been allowed for all of the trees boxed irrespective of their size for the reason that the deed to the Gulf Coast Lumber Company conveys no present interest in the trees, but only such trees as the grantee therein or its assigns should cut and remove from the land within twenty years from the execution thereof.

(3) That the Gulf Coast Lumber Company deed did not convey the whole of any tree growing on the land, but only that part of the trunks of the trees that could be cut into saw logs and that consequently no right to extract turpentine, which comes from the whole tree, was thereby conveyed.

(4) The court below erroneously held that the burden was on the appellant of proving that the trees boxed by the appellees were not embraced with the description thereof in the deed to the Gulf Coast Lumber Company.

(5) That the appellant should have been allowed the statutory penalty for all of the trees boxed by the appellees, and, if not for all, then at least for those that measured less than ten inches in diameter fifteen inches from the ground when boxed.

(6) That an injunction restraining the appellees from further trespassing on the appellant's land should have been granted.

1. "Timber means generally such trees as are fit to be used in buildings or ships." 3 Bouvier's Law Dictionary (3 Ed.), p. 3277; 28 A. & E. Enc. L. (2 Ed.), p. 536. Logs are:

"The stems or trunks of trees cut into convenient lengths for the purpose of being afterwards manufactured into lumber of various kinds." 2 Bouvier's Law Dictionary (3 Ed.), p. 2046.

A saw log is necessarily a log not only of convenient length for being manufactured into lumber, but one that is otherwise also suitable therefor. The term "saw log timber," therefore, as used in contracts for the sale of growing trees, means such trees as can be cut into logs of convenient size for being sawed or manufactured into lumber. *Teachout* v. *Clough,* 143 Mo. App. 474, 127 S. W. 672; 17 R. C. L. 1065.

What diameter a tree must attain before it is suitable for being sawed or manufactured into lumber is a question of fact to be proved in each case either by evidence of any custom relative thereto among people engaged in the saw milling and lumber business, or, in the absence thereof, as any other fact is proved.

The court below committed no error in holding that the Gulf Coast Lumber Company deed is valid and in admitting the evidence from which it reached the conclusion that the trees thereby conveyed were such as measured eight inches in diameter fifteen inches from the ground.

2. "Instruments of sale of standing trees, containing a clause limiting the time in which the vendee may cut and remove them, have been given various constructions. On one view, the clause is a covenant and absolute title passes. . . . If timber is removed after the period, the vendor's remedy is for breach of covenant or in trespass, but the value of the trees is not a part of the damages. . . . A second view . . . regards the clause as a condition precedent with title passing only to those trees cut and removed within the period. . . . The third, and most preferable view, [is] that the clause is a condition subsequent and that title passes subject to defeasance as to timber not removed within the time limit. . . . This construction fulfills the intention of the parties without violating the language of the instrument and avoids a situation where a legal title can only be asserted by means of a trespass." 28 Harvard Law Review, pp. 114, 115.

135 Miss.—41.

This court has several times repudiated the first of these views; that is, that the clause limiting the time within which the vendee may cut and remove the timber is a covenant and that absolute title passes, and has uniformly held that the vendee's right to cut and remove the trees is limited thereby. In *Clark* v. *Ingram-Day Lumber Co.,* 90 Miss. 479, 43 So. 813, in deciding that the right of the grantee in such a contract to remove timber from the land ceased on the expiration of the time therein given him so to do, it was said that ''by the plain terms of this contract the timber is sold to the grantee on condition that it be removed from the premises within'' the specified time, thereby aligning this court with those courts that hold that the limitation is a condition subsequent and that title to the timber passes subject to defeasance as to the timber not removed within the time limit. That such was the effect of such a contract was apparently assumed by the court in *Rodgers* v. *Lumber Mineral Co.,* 115 Miss. 339, 76 So. 145. This is the view most in accord with the intention of the parties as manifested by the words that they used, and should be and will be adhered to by us. A large number of cases so holding will be found collated in the note to *U. S. Coal & Oil Co.* v. *Harrison,* 47 L. R. A. (N. S.) 875.

3. The definition hereinbefore given of the term ''saw log timber'' disposes of the appellant's contention that only that part of the trunk of the trees that could be cut into saw logs was thereby conveyed.

4. It will be unnecessary for us to determine whether the burden rested on the appellee of proving that the trees boxed by them are within the description of the trees conveyed by the Gulf Coast Lumber Company deed, or upon the appellant to prove that they are not, for the reason that it is manifest from the record that the court's ruling thereon could not in any way have prejudiced the appellant.

5. We will assume that the appellee committed a trespass on the appellant's land by entering on it for the pur-

pose of boxing the trees, for no right so to do is conveyed by the Gulf Coast Lumber Company deed (*Rogers* v. *Lumber Mineral Co.*, 115 Miss. 339, 76 So. 145); but the thing prohibited and penalized by section 4983, Code of 1906 (Hemingway's Code, section 3252), is not the entering on land without the consent of the owner, but the boxing for turpentine of the trees thereon "without consent of the owner of the land or tree."

In order to come within this statute the boxing of trees must be done not only without the consent of the owner of the land or of the trees, but also willfully or recklessly. *Therrell* v. *Ellis*, 83 Miss. 494, 35 So. 826. The trees ten inches or more in diameter fifteen inches from the ground, as hereinbefore appears, were owned not by the appellant, but by the appellee, the Ingram Day Lumber Company, and as set forth in the order of the court below, by which the cause was referred to a master, the boxing of the trees less than ten inches in diameter fifteen inches from the ground was done in good faith under the belief that they were "saw log timber" and therefore conveyed by the Gulf Coast Lumber Company deed. The court below committed no error in not allowing the appellant to recover the statutory penalty.

6. Why the injunction prayed for was not granted does not appear, and it may be that as contended by the appellee the prayer therefor was not pressed by the appellant in the court below. The record however is silent as to that, and it appears therefrom that the injunction should have been granted.

The decree of the court below would be affirmed but for the error in failing to grant the injunction, for which the decree will be reversed, and a decree will be rendered here in accord with that below except that an injunction as prayed for will be added thereto.

*Reversed and decree here.*