## HUNTER *v.* HUGHES *et al.**

(Division A.   May 19, 1924.   Suggestion of Error Overruled June 9, 1924.)

[100 So. 371.   No. 23735½.]

1. INDEMNITY.   *Contract conveying timber in settlement for timber wrongfully cut from grantee's land held contract of indemnity.*

Contract of settlement and conveyance whereby plaintiff, who had wrongfully cut and removed timber from defendant's land, conveyed to defendant enough timber on his own land to enable defendant to supply third party with timber to which third party was entitled under conveyance from defendant, *held* a contract of indemnity by which plaintiff undertook to indemnify defendant against any loss she might suffer as result of claim by third party, in view of deed from defendant giving third party the same rights with reference to timber conveyed by plaintiff, as if growing on defendant's land.

2. LOGS AND LOGGING.   *Rights terminated on expiration of period specified for removal in another contract.*

Under conveyance of sufficient timber to entitle third party to timber to which he was entitled under contract with grantee, thereby indemnifying grantee against loss on account of wrongful cutting of timber on grantee's land by grantor, and grantee's subsequent conveyance of such timber to third party, third party's rights in timber on grantor's lands *held* to terminate upon expiration of time limit for cutting specified in contract between grantee and third party.

*Headnote 1.   Indemnity, 31 C. J., section 18;   2.   Logging, 25 Cyc. p. 1552.

APPEAL from chancery court of Washington county.

HON. E. N. THOMAS, Chancellor.

Suit by G. W. Hunter against Mary Ella Hughes and another. Decree for defendants, and plaintiff appeals. Reversed and remanded.

Appellant G. W. Hunter filed his bill in the chancery court of Washington county against appellees Mrs. Mary Ella Hughes and George Leavenworth by which he sought to cancel conveyances of the cottonwood timber from ap-

pellant to appellee Mrs. Hughes and from the latter to appellee Leavenworth, standing on Woodstock plantation in Washington county owned by appellant, and to enjoin appellee Leavenworth from cutting and removing such cottonwood timber. A writ of injunction was issued and served according to the prayer of the bill. The appellees demurred to the bill, which demurrer the trial court sustained, and entered a decree dissolving the injunction and awarding damages against appellant for the wrongful suing out of the injunction, from which decree an appeal to this court was granted to settle the principles of the cause.

One contention made by appellant is that whatever rights appellee Leavenworth had to cut and remove the cottonwood timber from said Woodstock plantation had expired when he undertook to exercise such rights and when the bill in this cause was filed; that the title thereto had been reinvested in appellant by virtue of a time limit stipulation in the conveyance to said cottonwood timber by appellee Mrs. Hughes to appellee Leavenworth, which was the basis of and part of said conveyance from appellant to appellee Mrs. Hughes. In view of the fact that the case is disposed of in solving this contention of appellant, none of the other questions will be discussed, and in stating the case the facts alone so far as practicable will be developed out of which that question arises.

On the 28th of April, 1909, appellee Mrs. Hughes conveyed by deed to appellee Leavenworth the exclusive right to cut and remove within thirteen years from June 1, 1909, from her Timberlake plantation in Bolivar county all trees thereon fifteen inches or more in diameter two feet from the ground, not to exceed the aggregate of four million feet, for which he paid her ten thousand dollars. By said deed she also conveyed the right to appellee Leavenworth to cut and remove within said period of time additional trees of the same dimensions up to two million feet, for which he was to pay her three

dollars and fifty cents per one thousand feet after cutting, but before removal of the trees from said plantation.

During the year 1913 appellee Mrs. Hughes sold to appellant the willow trees on said Timberlake plantation, which were purchased by appellant for use in revetment work on the levees of the Mississippi river. This contract was evidenced by correspondence between appellant and appellee Mrs. Hughes. After such purchase by appellant from appellee Mrs. Hughes and during the years 1913 and 1914 appellant in addition to cutting willow trees from said Timberlake plantation cut and removed therefrom a large number of cottonwood trees, thereby making it possible that appellee Leavenworth would not be able to obtain the quantity of trees to which he was entitled under said conveyance to him from appellee Mrs. Hughes. Whereupon the latter demanded reparation from appellant for the cutting of said cottonwood timber, which resulted in a settlement between appellant and appellee Mrs. Hughes. This settlement was evidenced by a contract in writing of date 13th of April, 1914. By the terms of this contract the appellee Mrs. Hughes released appellant from all liability for cutting and removing the cottonwood trees from her Timberlake plantation and in consideration of such release appellant paid her two thousand seven hundred dollars in cash and agreed to protect her against any claim by appellee Leavenworth that might arise because of the insufficiency of trees remaining on said Timberlake plantation to enable him to obtain the quantity of trees to which under his said conveyance he was entitled. And for the purpose of protecting appellee Mrs. Hughes against any such claim on the part of appellee Leavenworth appellant conveyed to her all the cottonwood trees on the Woodstock plantation belonging to him upon certain conditions as will hereinafter appear from said conveyance. Appellee Leavenworth having paid appellee Mrs. Hughes for four million feet of timber on Timberlake plantation and claiming to have found that he lacked

about one million five hundred thousand feet of getting the four million feet to which he was entitled under his said conveyance, and that he desired to exercise his right to the two million additional feet given him by said conveyance at the price of three dollars and fifty cents per thousand feet, the appellee Mrs. Hughes assuming to act under the terms of her said contract with appellant conveyed to appellee Leavenworth by deed dated June 1, 1922, three million five hundred seven thousand, seven hundred fourteen feet of cottonwood trees on Woodstock plantation, to make good such alleged deficiency of cottonwood timber. It will be noted that this latter conveyance was made on June 1, 1922, and that the time limit of thirteen years for the removal of the timber conveyed in said deed from appellee Mrs. Hughes to appellee Leavenworth on said Timberlake plantation expired the same day, June 1, 1922. After receiving said last-mentioned deed from appellee Mrs. Hughes, appellee Leavenworth under date of June 27, 1922, notified appellant in writing of the execution of said deed and the rights he claimed thereunder and of his purpose to proceed at once to the cutting and removal of the cottonwood timber he claimed thereunder. All of said conveyances and correspondence referred to were made exhibits to the bill. In order to a proper understanding of the case it is probably necessary to set out said conveyances. Leaving off the formal parts and the signatures they follow:

First the conveyance from appellee Mrs. Hughes to appellee Leavenworth, dated April 28, 1909:

"That for and in consideration of the sum of one thousand ($1000) dollars, cash to be paid upon the execution and delivery of this agreement, and the further payments to be made by said party of the second part to said parties of the first part as follows, to-wit: One thousand ($1000) dollars, payable on or before June 1, 1910; two thousand ($2000) dollars on or before June 1, 1911; one thousand ($1000) dollars on or before June

1, 1913; one thousand ($1000) dollars on or before June 1, 1914; two thousand ($2000) dollars on or before June 1, 1915; two thousand ($2000) dollars on or before June 1, 1917—said amounts to be payable to the said parties of the first part in New York exchange, each respective amount being represented by a note of a party of the second part, payable to the parties of the first part or bearer on the dates mentioned and bearing eight (8%) per cent. interest from maturity until paid, the parties of the first part do hereby grant unto party of the second part the exclusive right to cut and remove all trees fifteen (15) inches and over in diameter, two feet from the ground on what is known as Timberlake plantation including all sections 2, 3, 4, and that part of section 5, in township 20, range 10 west, not included in Kennedy tract, with accretions thereto belonging in Bolivar county, state of Mississippi, standing on said plantation at any time within the term of thirteen (13 years commencing from June 1, 1909, but not to exceed in the aggregate four million feet (4,000,000) subject to the terms and conditions herein mentioned and provided the above payments are promptly made when due.

"It is understood and agreed between the parties hereto that after the four million feet of timber above referred to has been cut on the above-described property within said period of thirteen (13) years, said party of the second part may within said period of thirteen years cut and remove additional trees of the dimentions hereinbefore designated up to two million feet for which additional trees to be cut and removed as aforesaid, the said second party shall pay said first party at the rate of three and 50/100 ($3.50) dollars per thousand feet and said payments to be made monthly after cutting but before such additional timber is removed from the said property. Party of the second part is to keep a separate record of the timber cut on the said property, and to furnish said first party a statement showing the quantity of timber cut off from said property whenever

called for, and they shall further notify said first party whether the quantity of timber so cut shall amount to four million feet, and the two million feet respectively, and said parties of the first part shall have the right from time to time either personally or by a representative to inspect the premises and measure timber standing or lying thereon.

"Said party of the second part is to exercise reasonable care in cutting and taking away timber so as to not damage or injure the standing timber remaining on said property, nor to unnecessarily interfere with the cultivation of the same by said first parties, or her tenants, croppers or employees. It is understood and agreed to that in estimating the quantity of timber cut, all trees that have been cut down and not removed from off the property shall be included in the estimate, and that all trees and timber standing, lying or being on the within mentioned property at the expiration of said period of thirteen years, shall be the property of the parties of the first part, said parties of the first part hereby agree to give the party of the second part the preference at the same price over all other bidders should the parties of the first part decide to sell the fee-simple title to said Timberlake plantation or dispose of any further timber rights.

"The party of the second part shall have the right to maintain camps upon the said plantation for the purpose of removing the said timber and to so use said land as may be necessary for the removal of the timber as aforesaid, provided that in so doing the party of the second part or his agents or workmen shall not damage the crops growing on said plantation.

"Said party of the second part assumes all risk of loss from thievery, storms, floods, or from any other cause whatsoever, and further agrees to pay promptly the payments hereinbefore mentioned, and to carry out all the conditions, terms and stipulations herein mentioned.

"The said parties of the first part agree not to use or willfully allow to be used the property so as to injure the timber thereon..

"The said parties of the first part reserve the right to build a hunting lodge or club house at any suitable point on said land for the purpose of allowing persons to hunt over the aforesaid property and also reserve the right should they, the said parties of the first part, so wish to keep open the old roadways through the said property, to all of which the said party of the second part agrees."

Next the contract of settlement and conveyance from appellant to appellee Mrs. Hughes, dated April 13, 1914:

"Whereas, the said G. W. Hunter, has without the consent of the said party of the first part, cut and removed certain cottonwood trees from that certain plantation belonging to said party of the first part, known as Timberlake plantation, situated in Bolivar county, in the state of Mississippi; and

"Whereas, the said party of the first part has made a claim against the said party of the second part for the cottonwood trees so cut and removed by the said party of the second part; and

"Whereas, heretofore, to-wit: On the 28th day of April, 1909, the said party of the first part, joined by her husband, S. R. Hughes, made and entered into a certain agreement in writing with George Leavenworth of Greenville, Mississippi, which said agreement is duly recorded in Book E—10, page 135, of the land records of the office of the clerk of the the chancery court of Bolivar county, Mississippi, with the terms and provisions of which said agreement the said party of the second part is familiar, and which agreement is here referred to for full particulars;

"And, whereas, under and by virtue of the said contract with the said George Leavenworth, the said George Leavenworth has, or will have certain rights to certain timber on the said Timberlake plantation, but it cannot,

at present be ascertained and determined whether or not the cutting and removal of the cottonwood trees by the said party of the second part, hereinbefore referred to, will in any manner preclude or prevent the said George Leavenworth from obtaining the quantity of timber to which he will be entitled under and by virtue of the contract made with him by the said party of the first part and her husband, as aforesaid; and

"Whereas, it is desired by the parties to this agreement to have the said party of the second part pay the said party of the first part the value of the cottonwood trees so cut and removed by him, as aforesaid, and to also insure, as far as possible, that there shall be available to the said George Leavenworth, the quantity of timber to which he will be entitled under the contract with him as aforesaid:

"Now, therefore, it is distinctly understood and agreed by the parties hereto as follows, to wit:

"(1)  For and in consideration of the sum of twenty-seven hundred dollars ($2,700) this day cash in hand paid to the said party of the first part by the said party of the second part, and in consideration of the other covenants and agreements herewith made by the said party of the second part, the said party of the first part releases the said party of the second part from any and all claims and demands of every kind and character that the said party of the first part now has against the said party of the second part for cottonwood trees heretofore cut and removed from the said Timberlake plantation, by the said party of the second part.

"(2)  It is further distinctly understood and agreed between the parties hereto, as a consideration for the foregoing release of the said party of the second part by the said party of the first part and in order to protect the party of the first part against any claim on behalf of the said George Leavenworth, his assigns or representatives, of an insufficiency of timber on said Timberlake plantation to enable the said George Leavenworth to se-

cure whatever quantity he might be entitled to under any or all of the provisions of said contract with the said George Leavenworth, that the said party of the second part hereby conveys unto the said party of the first part all of the cottonwood trees now standing and growing on what is known as Woodstock plantation in Washington county, Mississippi, being the plantation purchased by the party of the second part from H. & C. Newman, Limited. This conveyance, however, is made for the purposes and on the conditions as follows, to-wit:

"Whereas, owing to the fact that the said party of the second part has cut and removed from the Timberlake plantation certain cottonwood trees as hereinbefore stated, a question has arisen as to whether or not there will remain on the said Timberlake plantation sufficient trees to enable the said George Leavenworth to secure and obtain all of the trees and timber to which he may in any wise be entitled by virtue of any of the provisions of the said contract. It is agreed and understood that the title to all of the cottonwood trees now growing and standing on the said Woodstock plantation, which is hereby conveyed to the said party of the first part, as aforesaid, shall remain and be in the said party of the first part and if there shall be an insufficient quantity of trees and timber on the Timberlake plantation to enable the said George Leavenworth to secure and obtain from said Timberlake plantation all of the trees and timber to which he shall be entitled by virtue of the con tract with the said George Leavenworth, as aforesaid, the said party of the first part shall have the right, and is hereby authorized, to convey to the said George Leavenworth so much of the cottonwood timber now growing and standing on the Woodstock plantation hereby conveyed as may be necessary to make up and supply the deficiency in the quantity which shall be on the said Timberlake plantation, as aforesaid, and the said George Leavenworth, his assigns and representatives, shall thereupon have the same rights, remedies and privileges,

with reference to said cottonwood trees growing and standing on said Woodstock plantation in all respects as if they were growing on said Timberlake plantation.

"(3) It is further agreed and understood that if said George Leavenworth shall, within the time provided by the contract between himself and the said party of the first part and her husband, S. R. Hughes, procure and obtain from said Timberlake plantation, all of the trees and timber to which he shall be entitled under said contract, and shall make no claim to a deficiency under said contract, said party of the first part shall reconvey to said party of the second part, the trees and timber hereby conveyed to the said party of the first part, and if, in order to supply the said George Leavenworth, or his assigns or representatives, the trees and timber to which he shall be entitled under said contract, it shall be necessary to permit him to cut and remove some of the cottonwood trees hereby conveyed, and if some of the cottonwood trees hereby conveyed shall remain standing after the said George Leavenworth, his assigns or representatives, shall have received all that he is entitled to under said contract, the said party of the first part will reconvey such trees so standing to the said party of the second part."

And then the conveyance from appellee Mrs. Hughes to appellee Leavenworth to a sufficiency of the cottonwood timber on the Woodstock plantation owned by appellant to make up the alleged deficiency of cottonwood timber on the Timberlake plantation belonging to appellee Leavenworth:

"Whereas, the said Leavenworth claims that under said contract, he was able to procure only two million four hundred ninety-two thousand two hundred and eighty-six feet of timber (including eight hundred sixty-two thousand which he could have obtained but did not cut), and further claims to have paid to the said Hughes under said contract for four million feet of timber, making one million five hundred seven thousand seven hun-

dred fourteen feet claimed to have been paid for and not obtained, and further claims that he is also entitled under said contract to an additional two million feet to be paid for at three dollars and fifty cents per thousand feet; and

"Whereas, by an instrument of date the 13th day of April, 1914, which is recorded in the office of the Chancery Clerk of Washington County, Mississippi, in Book 149, page 268, G. W. Hunter conveyed to N. E. Hughes "All of the cottonwood trees now standing and growing on what is known as the Woodstock Plantation in Washington county, Mississippi, being the plantation purchased by G. W. Hunter from H. & C. Newman, Limited." and in said contract gave the said M. E. Hughes the right to convey to said George Leavenworth so much of said cottonwood timber on said plantation as may be necessary to make up and supply any deficiency in the quantity which might be on the said Timberlake plantation, and that said George Leavenworth should under such conveyance have the same rights, remedies and privileges with reference to said cottonwood trees standing on said Woodstock plantation in all respects as if they were growing on said Timberlake plantation, to which instrument reference is hereby made for full particulars:

"Now, therefore, in consideration of the premises, I, M. E. Hughes, do hereby convey unto said George Leavenworth, such right and title as I may have the right to transfer and convey unto said Leavenworth under the terms of said instrument dated April 13, 1914, to three million five hundred seven thousand seven hundred fourteen feet of the cottonwood timber on the said Woodstock plantation, the last two million feet whereof is to be paid for to me by said Leavenworth at the rate of three dollars and fifty cents per thousand feet, said payments to be made monthly after cutting, but before the same is removed from said land, as is provided in said contract of date the 28th day of April, 1909.

"The said Leavenworth, by the acceptance of this conveyance, agrees and obligates himself to join with

me in a reconveyance to said Hunter of any of the timber conveyed to me by said Hunter to which the said Hunter may be entitled to a reconveyance under the terms of said agreement of April 13, 1914.''

*L. C. Going* and *Watson & Jayne,* for appellant.

The contention of appellant is that the Hunter to Hughes contract is one of indemnity. That the purport and intent thereof was one of indemnity for the purpose of protecting appellee, Hughes, from any claim that appellee, Leavenworth, might have for timber purchased of her by him, Leavenworth, and alleged to have been taken by appellant, Hunter. If no trees of the dimensions contracted for by appellee, Leavenworth, were taken by appellant then there was no shortage of timber to be charged against the indemnity.

Throughout the whole of the ''indemnity contract'' it is clearly manifest that the right of appellee Leavenworth harked back to the Timberlake contract; that he was only to cut such timber as he was entitled to take under that particular contract, and no more. Therefore, if he was entitled, under the Timberlake contract, to only what trees were there, he could not have expected to be indemnified for trees that were not there.

It is plain that the contract which we here call the ''indemnity contract'' was one of indemnity. It was more than this, it was a mortgage or trust deed of indemnity. *McLean* v. *Ragsdale,* 31 Miss. 701.

Nor could the scope of the ''indemnity contract'' be enlarged or varied by the appellees in the making of the assignment contract. Now could the appellees, without the consent of the appellant, fix the amount of the liability of appellant by the stipulations of the last named contract.' *Fidelity & Dep. Co.* v. *Henry,* 69 So. (Miss.) 1011.

That the ''indemnity contract'' was one of indemnity is sustained by 12 Decennial Digest. (2 Ed.) subject:

Indemnity, page 865, Scope and Extent of Liability. See 12 Decennial Digest (2 Ed.), 870, 871, 872. Effect of assignment contract on the liability of grantor in the Timberlake contract.

Inasmuch as the "indemnity by contract" and the assignment contract hark back to and are based on the Timberlake contract, there could be no liability fixed by the appellees in the assignment contract establishing or setting up under the Timberlake contract, which did not originally exist against the appellee, Hughes, thereunder. It is one of the fundamental principles of the law of indemnity that the indemnitor cannot be bound without notice. *McArthur* v. *Ogletree*, 61 S. E. (Ga.) 859; *Pfarr* v. *Standard Oil Co.*, 146 N. W. (Ia.) 851; *Grant* v. *Maslne*, 115 N. W. (Mich.) 472; *Henderson* v. *Eckern*, 132 N. W. (Minn.) 715.

*R. B. Campbell* and *Wasson, Nelson & Wasson*, for appellees.

Appellant's counsel argue that Exhibit A was a mere indemnity contract, its purpose being to indemnify and save harmless said Hughes from any liability to Leavenworth, on account of any loss sustained by him, in failing to obtain from Timberlake plantation the quantity of timber to which he was entitled under his contract; and that, if Leavenworth obtained all of the timber that was on Timberlake plantation, during the period covered by his contract, and failed to obtain as much as four million feet, he got all that he was entitled to, and consequently, sustained no loss. Appellant's bill nowhere hints at any such theory, and neither Exhibit A nor Exhibit C is attacked on such grounds. However, if such theory had been relied on, the same is untenable.

Exhibit C, as hereinbefore stated, conveyed to Leavenworth all of the timber on Timberlake plantation fifteen inches and over in diameter, not to exceed four million feet, for which he paid ten thousand dollars; with the

further right in him to cut and remove two million feet more, for an additional price.

Now, it must be assumed that the parties must have considered that there was so much timber there; otherwise, they would not have contracted for it, and they must have felt sure that there was at least four million feet there, from the fact that they provided for two million feet additional.

However, it does not lie in the mouth of an admitted trespasser, who entered upon Timberlake plantation and cut and removed large quantities of cottonwood trees, without undertaking to designate the quantity of which he had deprived Leavenworth to come into a court of equity and insist, by way of mere assumption, that Timberlake plantation, during the period of Leavenworth's contract, did not contain the quantity of timber therein designated.

The burden was on appellant to have alleged and proved the quantity that he converted, and that this quantity, added to all that Leavenworth actually got, was all that Timberlake plantation contained, even if Exhibit A was nothing more than a contract of indemnity.

But Exhibit A was more than a mere contract of indemnity. That was only one of its features. It was contract of settlement for a trespass committed by appellant, as an encroachment on Leavenworth's right, and so sure were the parties, that Leavenworth would obtain the quantity to which he was entitled, that, instead of paying Leavenworth for the amount converted, he paid said Hughes two thousand and six hundred dollars in cash; and, even then, simply stated in Exhibit A that it could not then be determined whether or not the cottonwood trees cut and removed by appellant will prevent Leavenworth from obtaining the quantity of timber to which he was entitled.

So we submit that, even if Exhibit A be viewed simply as a contract of indemnity, and even if it had been made to appear, by allegation and proof, that there never had

135  Miss.—42.

been as much as four million feet of timber on Timberlake plantation, appellant was bound to make good, under the terms of Exhibit A, the amount of cottonwood trees which he had cut; and, even in that point of view, he was not entitled to a cancellation of Exhibits A and B.

*L. C. Going* and *Watson & Jayne,* for appellant, in reply.

The Timberlake contract is the contract around which the other contracts revolve and under and upon which the rights of the parties depend. It is necessary to determine the rights of the appellees under this contract.

The right to cut the timber under this contract commenced on June 1, 1909, and continued for a period of thirteen years from that date. Under the terms of this contract, the right of Leavenworth to cut any timber on said land expired on 1st day of June, 1922, because that was the end of the thirteen years. In other words, the contract to cut the four million feet and as well the two million feet of timber under the express and specific terms of the contract having commenced on June 1, 1909, necessarily expired thirteen years after that date, which was June 1, 1922.

If Leavenworth had never cut a stick of timber on the Timberlake plantation until the 1st day of June, 1922, his right to cut on that date expired, whether there was one, two, three or ten million feet on the tract, so this contract having placed upon Leavenworth's right to cut the timber a specific limitation and by that limitation his right expired on June 1, 1922, the contract shows on its face that under no circumstances could he have any rights to any timber on either the Timberlake or the Woodstock plantations.

*R. B. Campbell* and *Wasson, Nelson & Wasson,* for appellees, in rejoinder.

The question arises whether or not whatever right appellee Leavenworth had to cut and remove the cotton-

wood timber from appellant's lands was limited to the thirteen year period provided for in the contract, Exhibit C. Leavenworth's right was not so limited.

By virtue of said Exhibit C, Leavenworth had the exclusive right to cut all the timber on Timberlake plantation, belonging to the appellee, Mrs. Hughes, of certain dimensions, and not to exceed a fixed quantity, within the period of thirteen years from June 1, 1909. Appellant had trespassed on the exclusive right of Leavenworth, in that he had cut and removed from Timberlake plantation a large quantity of cottonwood timber, which might or might not prevent Leavenworth from obtaining the quantity to which he was entitled; and, owing to the uncertainty as to that, appellant effected a settlement for his trespass directly with the appellee, Mrs. Hughes, the owner of Timberlake plantation, the inference being that, independent of the cottonwood timber cut and removed by appellant, enough will perhaps remain on Timberlake plantation to enable Leavenworth to obtain the quantity to which he was entitled under his contract, Exhibit C, in which event Leavenworth would have no ground to complain, and the rights of Mrs. Hughes will have been preserved by the settlement with her.

But, owing to the uncertainty that Leavenworth would obtain the quantity of timber to which he was entitled, under his contract, Mrs. Hughes desired to be protected against any claim on Leavenworth's part, for a deficiency in the quantity of timber to which he was entitled.

It appears that the title to the cottonwood trees on Woodstock plantation which was conveyed to Mrs. Hughes should be, and "remain" in her; but no time is mentioned, as to how long the title should so remain in her; and no time is mentioned, in Exhibit A, within which she should convey to Leavenworth a sufficiency of the cottonwood timber on Woodstock plantation to supply the deficiency of the timber on Timberlake plantation that might arise.

The conveyance by her to Leavenworth of the cottonwood timber on Woodstock plantation was to be made, not within any specified time, but upon a contingency, and that contingency was, in the event, or if, there should be an insufficient quantity of trees and timber on the Timberlake plantation to enable Leavenworth to obtain therefrom the quantity to which he is entitled, under his contract. As no time was prescribed, in Exhibit A, within which the deficiency in the quantity of timber on Timberlake plantation was to be determined, nor as to when Mrs. Hughes should convey to Leavenworth the cottonwood timber on Woodstock Plantation, to cover such deficiency as may occur, the just conclusion is, that such deficiency should be determined at the expiration of the period of time prescribed in Leavenworth's contract, Exhibit C, to-wit: June 1, 1922.

If, before that time, Mrs. Hughes had conveyed to Leavenworth any part of the cottonwood timber on Woodstock plantation, without knowing that there was a deficiency of timber on Timberlake plantation, and what that deficiency was, she would have violated the contingency on which she was authorized to make the conveyance and that contingency was this: "if there shall be an insufficient quantity of trees and timber on the Timberlake plantation to enable the said George Leavenworth to secure and obtain from said plantation all of the trees and timber to which he shall be entitled by virtue of his contract."

Paragraph 3, gives the full thirteen-year period of time specified in Exhibit C, for determining whether or not there would be a deficiency of timber on Timberlake plantation, and the time, for which at least, Mrs. Hughes should hold the title to the cottonwood on Woodstock plantation, for the purpose of determining whether or not it was her duty to reconvey the timber on Woodstock plantation to appellant, or to convey to Leavenworth so much thereof as will be necessary to supply the deficiency of timber on Timberlake plantation.

Under the terms of paragraph 3, Mrs. Hughes was not to convey to appellant the timber on Woodstock plantation, except in the event that Leavenworth should, within the thirteen-year period prescribed within Exhibit C, obtain from Timberlake plantation all of the timber to which he was entitled, and should make no claim for a deficiency; but, if within that period of time, there was a deficiency she was to convey so much of the cottonwood timber on Woodstock to Leavenworth to supply that deficiency. That being true, her right to convey to Leavenworth arose at the expiration of the thirteen year period; and she conveyed to Leavenworth by Exhibit B. on June 1, 1922, the day on which the thirteen-year period expired.

Argued orally by *H. C. Watson,* for appellant.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above). It is necessary to ascertain first the character of the contract of settlement and conveyance of April 13, 1914, between appellant and appellee Mrs. Hughes. It is contended on behalf of appellant that in its controlling features it is a contract of indemnity entered into for the purpose of saving appellee Mrs. Hughes from loss at the hands of appellee Leavenworth on account of any deficiency in cottonwood timber on the Timberlake plantation caused by appellant's trespass thereon to which appellee Leavenworth was entitled under his said conveyance from appellee Mrs. Hughes.

We do not think we could do better than to quote what is said in 31 C. J., section 1, p. 419, in defining contracts of indemnity:

"The word 'indemnity' means protection or exemption from loss or damage past or to come; it signifies to reimburse to make good and compensate for loss or injury, to make sure, to protect from injury, etc. Gener-

ally speaking, the word carries with it two meanings:
(1) In the sense of giving security; and (2) in the sense
of relieving a party from liability for damage already
accrued; and in a broad and general sense indemnity is
that which is given to a person to prevent his suffering
damage. But as relating to the contract of indemnity
it may be more specifically defined as the obligation or
duty resting on one person to make good any loss or
damage another has incurred or may incur by acting at
his request or for his benefit.''

For the purpose of determining this question it is nec-
essary to consider in connection with said contract of
settlement and conveyance of April 13, 1914, between
appellant and appellee Mrs. Hughes, the said convey-
ance of April 28, 1909, between the latter and appellee
Leavenworth. It will be observed that by the latter con-
veyance appellee Mrs. Hughes granted to appellee Leav-
enworth ''the exclusive right to cut and remove all trees
fifteen inches and over in diameter two feet from the
ground . . . standing on said plantation *at any time
within the term of thirteen years commencing from
June 1, 1909.''* (Italics ours.) And in its fourth para-
graph said conveyance provides ''that all trees and tim-
ber standing, lying or being on the within mentioned
property at the expiration of said period of thirteen years
*shall be the property of''* appellee Mrs. Hughes. (Ital-
ics ours.) Said contract of settlement and conveyance
between appellant and appellee Mrs. Hughes of April
13, 1914, provides in substance simply that on account of
appellant having wrongfully cut and removed a lot of
cottonwood trees from Timberlake plantation belonging
to appellee Mrs. Hughes, which wrongful cutting and
removing might result in an insufficiency of timber on
said plantation to supply appellee Leavenworth with the
timber to which he was entitled under his said convey-
ance from appellee Mrs. Hughes, for the purpose of
enabling appellee Mrs. Hughes to make good any such
deficiency, appellant conveys to her enough cottonwood

timber standing on appellant's Woodstock plantation to meet that requirement, with the power in appellee Mrs. Hughes to convey the same to appellee Leavenworth. In said contract of settlement and conveyance in varying language it is made plain that said conveyance from appellant to appellee Mrs. Hughes was for the sole purpose of making the latter whole as against any reclamation claim on the part of the appellee Leavenworth under his said conveyance from appellee Mrs. Hughes. It is apparent from its language that the right of appellee Mrs. Hughes to convey said cottonwood timber on the Woodstock plantation to appellee Leavenworth was conditioned upon such deficiency. Especially is this true of the following language with which the second paragraph concludes:

"And the said George Leavenworth, his assigns and representatives, shall thereupon have the same rights, remedies and privileges with reference to said cottonwood trees growing and standing on said Woodstock plantation in all respects as if they were growing on said Timberlake plantation."

It seems clear that, taking these two instruments together, only one reasonable conclusion can be reached and that is that under the contract of settlement and conveyance of April 13, 1914, appellant only undertook to indemnify appellee Mrs. Hughes against any loss she might suffer as a result of a reclamation claim by appellee Leavenworth under the terms of his deed from appellee Mrs. Hughes of April 28, 1909. The latter deed, although not expressly made a part of the former, nevertheless was founded upon it. In fact it was the basis and consideration of said contract of settlement and conveyance.

The next question is: What were the rights of appellee Leavenworth under said conveyance from appellee Mrs. Hughes of April 28, 1909, with reference to the time limit within which he had to cut and remove the

timber therein conveyed? For appellant as we have seen only undertook to make good such rights.

It was held in *Clozelle Ladnier* v. *Ingram Day Lbr. Co.,* 100 So. 369, 135 Miss. 632 (May 19, 1924), that a deed to growing timber containing a clause limiting the time within which the vendee must cut and remove the same vested the title to the timber in the vendee subject to defeasance as to the timber not removed within the time limit; that as to all not removed within the time limit the title reinvested in the grantor without any action on his part. However, the said conveyance from appellee Mrs. Hughes to appellee Leavenworth is not open to interpretation so far as this question is concerned. It simply provides in so many words that at the end of the thirteen-year period all the timber covered by said deed should become the property of the grantor, appellee Mrs. Hughes. In other words, by the terms of the deed itself appellee Leavenworth got the title to the timber he purchased subject to be defeated by reinvestment in appellee Mrs. Hughes as to all of that not cut and removed within the period of thirteen years.

At the time of the filing of the bill in this cause did appellee Leavenworth own the cottonwood timber on appellant's Woodstock plantation which he claimed and was proposing to cut and remove? This question is answered in the negative largely by what has already been said. As we have seen under said conveyance of April 28, 1909, it is provided plainly that at the end of the time limit of thirteen years all that part of the timber conveyed still standing should become the right and property of the grantor, the appellee Mrs. Hughes. The said indemnity contract only undertook to insure that appellee Leavenworth should have all the rights he was entitled to under said conveyance to him from appellee Mrs. Hughes. It certainly undertook to convey no greater rights. Putting it differently, said indemnity contract in connection with said conveyance of appellee Mrs.

Hughes to appellee Leavenworth undertook and did provide the latter, in order to save him from loss, the Woodstock plantation in addition to what he already had, the Timberlake plantation, from which to get the six million feet of timber to which he was entitled. But it is plainly apparent under said instruments construed together that after the expiration of said thirteen-year time limit appellee Leavenworth's rights ceased and all timber on said Timberlake plantation conveyed to him not cut and removed became the property of the grantor in said conveyance, and the appellant became entitled to a reconveyance from appellee Mrs. Hughes under the third paragraph of said indemnity contract to all the cottonwood timber therein conveyed to her. The time limit of thirteen years having expired on June 1, 1922, and appellee Leavenworth having made no effort to cut and remove cottonwood timber from said Woodstock plantation until after the expiration of said time limit, we hold that whatever rights he had to cut and remove timber from either of said plantations had expired when the bill in this case was filed.

*Reversed and remanded.*